1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9         FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11    SALEEM SAQIB,                        No.  1:25-cv-2035 DC CSK P

12                    Petitioner,

13        v.                               ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14    WARDEN ANDREWS, et al.,

15                    Respondents.

16

17    **I. INTRODUCTION**

18        Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241

19    challenging his re-detention.[1]  Petitioner, a citizen of Pakistan, was admitted to the United States

20    on January 14, 1997 on a non-immigrant B2 visa for a temporary period not to exceed April 13,

21    1997.  Petitioner remained in the United States beyond this date without authorization.  After

22    petitioner's attempts to change his status were  unsuccessful, he was served in April 2003 with a

23    notice to appear and charged with removability for overstaying his visa.  He then applied for

24    asylum, which an immigration judge denied in June 2006 and ordered petitioner removed to

25    Pakistan.  Petitioner was later detained and released from U.S. Immigration and Customs

26    Enforcement ("ICE") custody under an Order of Supervision on August 24, 2009.  Almost sixteen

27

28    _____
      [1]  Petitioner is proceeding in forma pauperis and without counsel.

                                1

1    years later, on July 24, 2025, ICE revoked the Order of Supervision and re-detained petitioner the

2    same day.  This habeas action concerns petitioner's re-detention.  For the following reasons, this

3    Court recommends that the habeas petition be granted in part and denied in part.

4    **II.  FACTUAL BACKGROUND**

5         Petitioner is a citizen of Pakistan.  (ECF No. 7-2 at 7.)  Petitioner was admitted to the

6    United States on January 14, 1997 on a non-immigrant B2 visa with authorization to remain in the

7    United States for a temporary period not to exceed April 13, 1997.  (Id.)  Petitioner remained in

8    the United States beyond this date without authorization.  (Id.)

9         On April 8, 2003, the Department of Homeland Security ("DHS") served petitioner with a

10    Notice to Appear charging petitioner with removability pursuant to Immigration and Nationality

11    Act ("INA") section 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States

12    longer than permitted.  (ECF No. 7-2.)  Before this Notice to Appear was issued, petitioner made

13    various unsuccessful attempts to change his status.  (Id. at 3.)

14         On June 8, 2006, an immigration judge denied petitioner's application for asylum, finding

15    his application was untimely, petitioner was not credible, and petitioner was not entitled to

16    discretionary asylum based on his criminal history.  (Id. at 10-29.)  The immigration judge also

17    denied petitioner's application for withholding of removal under INA section 241(b)(3), 8 U.S.C.

18    § 1231(b), and his request for relief under the Convention Against Torture.  (Id.)  The

19    immigration judge ordered petitioner removed from the United States to Pakistan.  (Id.)  On July

20    27, 2007, the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal of the

21    immigration judge's decision.  (Id. at 32-34.)  The record also indicates on February 20, 2009, the

22    Ninth Circuit denied petitioner's petition for review of the BIA decision.  (Id. at 38 (citing *Saqib*

23    *v. Holder*, 312 Fed. Appx. 900 (9th Cir. 2009).)  On September 29, 2009, the BIA denied

24    petitioner's motion to reopen his removal proceedings.  (ECF No. 7-2 at 38-39.)

25         On August 24, 2009, petitioner received an Order of Supervision from ICE.  (Id. at 41.)

26    The Order of Supervision states that because DHS had not effected petitioner's deportation or

27    removal during the time prescribed by law, petitioner was ordered placed under supervision and

28    permitted to be at large under several conditions.  (Id. at 41.)  The I-213 form dated July 24, 2025

1  states that on March 2, 2010, petitioner was released from ICE custody under the Order of

2  Supervision.[2]  (Id. at 4.)  On July 24, 2025, petitioner reported to the San Jose ICE office where

3  he was taken into custody.  (Id. at 3.)  On that date, petitioner's Order of Supervision was revoked

4  due to "changed circumstances."  (Id. at 43.)  The Notice of Revocation of Release states, "ICE

5  has determined that you can be expeditiously removed from the United States pursuant to the

6  outstanding order of removal against you."  (Id.)

7  **III.  PROCEDURAL BACKGROUND**

8       On December 29, 2025, petitioner filed his habeas corpus petition on what appears to be a

9  form petition raising four claims for relief.  (ECF No. 1)  In claim one, petitioner argues that his

10  continued detention in immigration custody violates the Due Process Clause of the Fifth

11  Amendment because there is no significant likelihood that petitioner will be removed in the

12  foreseeable future.  (Id. at 13-14.)  In claim two, petitioner argues that ICE's third country

13  removal procedures violate the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against

14  Torture, implementing regulations and the Administrative Procedure Act.  (Id. at 14-15.)  In claim

15  three, petitioner argues that ICE's third country removal procedures violate the Fifth and Eighth

16  Amendments as punitive third-country banishments.  (Id. at 15-16.)  In claim four, petitioner

17  argues that his continued detention violates 8 C.F.R. § 241.13.  (Id. at 17-18.)

18       On December 31, 2025, this Court ordered respondents to file an answer to the petition or

19  motion to dismiss within seven days.  (ECF No. 5.)  This Court ordered that petitioner's

20  reply/traverse to the answer or motion to dismiss was due within ten days after being served with

21  respondents' response.  (Id.)  On January 7, 2026, respondents filed an answer to the petition.

22  (ECF No. 7.)  In the answer, respondents do not address claims two and three in the petition

23  regarding third country removal.  (Id.)  Petitioner did not file a response to respondents' answer.

24  **IV.  LEGAL STANDARD**

25       The Constitution guarantees the availability of the writ of habeas corpus "to every

26  ———————————————

27  [2]  This appears inconsistent with the Order of Supervision issued on August 24, 2009.  There are
no other documents in the record addressing when petitioner was initially detained and/or

28  released from ICE custody.  Because the Court need not resolve this factual inconsistency in its
determination of the merits of petitioner's claims, the Court declines to do so.

1  individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004)

2  (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in

3  custody upon the legality of that custody, and ... the traditional function of the writ is to secure

4  release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas

5  corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

6  Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

7  served as a means of reviewing the legality of Executive detention, and it is in that context that its

8  protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's

9  habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533

10  U.S. 678, 687 (2001).

11  **V. DISCUSSION**

12      **A. Claims One and Two**

13      In claim one, petitioner argues that his continued re-detention violates his right to due

14  process. (ECF No. 1 at 13-14.) In claim two, petitioner argues that his re-detention violates

15  8 C.F.R. § 241.13. (Id. at 17-18.) Because these claims require examination of whether the

16  government followed its own regulations that set out procedures in revoking release, procedures

17  that protect important due process rights, the Court discusses these claims together. See Vu v.

18  Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144,

19  152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental

20  right derived from the Constitution").

21      Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove

22  a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C.

23  § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the

24  removal order becomes administratively final; (ii) if the removal order is judicially reviewed and

25  a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is

26  released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period,

27  the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within

28  the removal period, the noncitizen shall be released and subject to supervision with certain

conditions. 8 U.S.C. § 1231(a)(3). Here, it is clear that the 90 day removal period has long passed where the BIA dismissed the appeal of the immigration judge's decision on July 27, 2007 and the BIA denied petitioner's motion to reopen on September 29, 2009. [3]

It is also undisputed that petitioner was on release under an Order of Supervision dated August 24, 2009. Order of Supervision (ECF No. 7-2 at 41); see 8 C.F.R. §§ 241.4, 241.13. Such a release is made if the government "determines that the alien would not pose a danger to the public or a risk of flight." 8 C.F.R. § 241.3(b).

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[4] 8 C.F.R. § 241.13(i)(2). A noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). As stated above, the Notice of Revocation of Release dated July 24, 2025 states that petitioner's release was revoked due to "changed circumstances" because ICE determined that petitioner could be "expeditiously removed from the United States." (ECF No. 7-2 at 43.)

Citing Zadvydas, respondents argue that petitioner has the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. (ECF No. 7 at 3-4.) Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must

---

[3] Respondents do not specify in their opposition when petitioner's removal order became administratively final, and different dates are presented in the records submitted. (See ECF No. 7-2 at 32-34, 38, 41, 43.)

[4] Section 241.13 also provides for revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision." 8 C.F.R. § 241.13(i)(1). Respondents do not argue that petitioner violated any release conditions or that his release was revoked on this basis. (See ECF No. 12.)

1    respond with sufficient evidence to rebut that showing." Id.

2    However, the burden-shifting framework from Zadvydas does not apply as to petitioner's

3    challenge to his re-detention.  As another district court noted in a similar context, "[t]his case is

4    not about ICE's authority to detain in the first place upon an issuance of a final order of removal

5    as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling

6    X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025).  As in Nguyen, "[t]his case is

7    about ICE's authority to re-detain [petitioner] after he was issued a final order of removal,

8    detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at

9    149.  "[T]his is not your typical first round detainment of an alien awaiting removal.  Petitioner

10   was previously detained, then released on supervised release for several years, and his 90-day

11   removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

12   It is clear that petitioner has been detained well beyond the expiration of the 90-day removal

13   period.

14   The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation.

15   Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's]

16   burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL

17   2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025)

18   ("[T]he regulations at issue in this case place the burden on ICE to first establish changed

19   circumstances that make removal significantly likely in the reasonably foreseeable future.");

20   Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of

21   release, the Government bears the burden to show a significant likelihood that the alien may be

22   removed in the reasonably foreseeable future.").  As the district court in Escalante found,

23   "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust

24   result and serious due process implications." Escalante, 2025 WL 2206113, at *3.  Therefore, the

25   Court must determine whether respondents have met their burden to show a changed

26   circumstance indicating a significant likelihood of removal.

27   The only changed circumstance that respondents identify in petitioner's case is that DHS

28   is currently working to obtain travel documents for petitioner's return to Pakistan.  (ECF No. 7 at

2.)  Respondents submitted the declaration of an ICE Deportation Officer who states, "DHS is working diligently to obtain travel documents and provide a flight to Pakistan for Petitioner. DHS believes removal is forthcoming."  (ECF No. 7-1 at 3.)

Respondents fail to address why travel documents from Pakistan were not previously obtained years ago, or why Pakistan is likely to issue a travel document for petitioner in the reasonably foreseeable future.  See Yan-Ling, 2025 WL 3123793, at *4 (citing Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around.").  Respondents do not explain whether removals to Pakistan are common, do not identify what considerations the Government of Pakistan might take into account when deciding whether to issue a travel document, and do not explain whether the Government of Pakistan will look favorably on petitioner's case.  See Yan-Ling, 2025 WL 3123793, at *3 (citing Liu v. Carter, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely)). The phrase "significant likelihood" requires something more than a mere possibility that removal will occur.  Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future."  Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).

In the instant case, petitioner's order of removal became final, at the latest, on September 29, 2009 when the BIA denied petitioner's motion to reopen his removal proceedings. Respondents do not explain why ICE has been unable to remove petitioner for more than 16 years.  "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely."  Chun Yat Ma v. Asher, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012).

Re-detention is permissible only if ICE can show there is a significant likelihood of

1    removal in the reasonably foreseeable future (or if there was a violation of the order of

2    supervision which respondents do not allege here). See 8 C.F.R. § 241.13(i). ICE re-detained

3    petitioner on July 24, 2025 without making that showing and without complying with its own

4    regulations. "ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v.

5    Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205

6    (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130

7    (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common

8    sense, government agencies are generally required to follow their own regulations."); United

9    States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265–68 (1954).

10    This Court also observes that Section 241.13(i)(2) requires that the determination that

11    changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future

12    is made *before* the removable noncitizen has had their release revoked. See Duong v. Charles,

13    2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2

14    (S.D. Cal. Oct. 27, 2025); Sphabmixay v. Noem; 2025 WL 3034071, at *2 (S.D. Cal. Oct. 3,

15    2025). Here, the record does not show that a changed-circumstance determination was made at or

16    before petitioner's re-detention on July 24, 2025. To the extent the changed circumstance could

17    be based on travel documents requested after petitioner's re-detention, petitioner's re-detention

18    violates § 241.13(i)(2) because a changed-circumstance determination was not made at or before

19    petitioner' re-detention on July 24, 2025.

20    When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed

21    circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was

22    now a significant likelihood of removal in order to meaningfully respond to the reasons and

23    submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, --- F. Supp. 3d

24    ----, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025). By stating "changed circumstances"

25    without any other information, the Notice of Removal did not give petitioner adequate notice of

26    the changed circumstances.

27    Petitioner also claims that he did not receive a prompt informal interview following his re-

28    detention. (ECF No. 1 at 17.) 8 C.F.R. § 241.13(i)(3) requires a prompt interview following re-

8

1    detention:  "Upon revocation, the alien will be notified of the reasons for revocation of his or her

2    release. The Service will conduct an initial informal interview promptly after his or her return to

3    Service custody to afford the alien an opportunity to respond to the reasons for revocation stated

4    in the notification. The alien may submit any evidence or information that he or she believes

5    shows there is no significant likelihood he or she be removed in the reasonably foreseeable future,

6    or that he or she has not violated the order of supervision."  The Notice of Revocation also

7    repeated these requirements regarding the prompt provision of an informal interview where

8    petitioner would "be given an opportunity to respond to the reasons for the revocation."  (ECF

9    No. 7-2 at 43.)  Respondents do not address petitioner's claim that he did not receive a prompt

10   informal interview following his re-detention where he was provided the opportunity to respond

11   to the reasons for revocation.  (See ECF No. 7.)

12       The Court finds that respondents violated their own regulation, 8 C.F.R. § 241.13.

13   Section 241.13 provides "special review procedures" governing ICE's authority to revoke a

14   removable alien's release in cases where, as here, ICE has (1) previously determined "that there is

15   no significant likelihood of removal in the reasonably foreseeable future," and then (2)

16   subsequently seeks to revoke release based on changed circumstances resulting in a

17   "determin[ation] that there is a significant likelihood that the alien may be removed in the

18   reasonably foreseeable future."  Id.  Respondents' failure to notify petitioner of the reasons for

19   revocation beyond "changed circumstances" and failure to provide petitioner with a prompt

20   interview following his re-detention violated 8 C.F.R. § 241.13(i)(3).  Courts have held that

21   "where an immigration 'regulation is promulgated to protect a fundamental right derived from the

22   Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is

23   invalid.'"  Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir.

24   1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts

25   have found that when ICE fails to follow its own regulations in revoking release, the detention is

26   unlawful, and the petitioner's release must be ordered.") (collecting cases).

27       This Court analyzes petitioner's due process claim "in two steps: the first asks whether

28   there exists a protected liberty interest under the Due Process Clause, and the second examines

the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection.  See Sanchez v. LaRose, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025).  These protections include at least notice and an opportunity to be heard regarding the revocation.  Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it.").  In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation.  See 2025 WL 3240808, at *5 (S.D. Cal. Nov. 20, 2025).  Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient.  See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.").  A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A. v. Bondi, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low.[5]  See Ortega v. Bonnar, 415 F. Supp.

---

[5]   While this Court recognizes that petitioner may have a criminal history dating back to 2003 as reflected in the rap sheet provided by respondents (ECF No. 7-2 at 49-68), respondents do not contend that petitioner's release was revoked based on any criminal history (see ECF No. 7).  In addition, immigration officials released petitioner and placed him under an order of supervision in August 2009 (ECF No. 7-2 at 41), and such a release is done after the government "determines that the alien would not pose a danger to the public or a risk of flight."  8 C.F.R. § 241.3(b).  The government may revoke petitioner's supervision and remove petitioner, but it must do so lawfully, following the requirements of the Constitution and its own regulations.  It has failed to do so here.

10

1   3d 963, 970 (N.D. 2019); <u>Doe v. Becerra</u>, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).

2   "That the Government may believe it has a valid reason to detain petitioner does not eliminate its

3   obligation to effectuate the detention in a manner that comports with due process." <u>E.A. T.-B. v.</u>

4   <u>Wamsley</u>, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).  Respondents identify no reason why

5   adequate notice and an informal interview "to afford the alien an opportunity to respond to the

6   reasons for revocation stated in the notification" were not provided to petitioner as required by

7   their own regulations.  <u>See</u> 8 C.F.R. § 241.13(i)(3).

8          For the reasons above, this Court recommends that the petition be granted as to claims one

9   and four alleging that petitioner's re-detention is unlawful because the government failed to

10  demonstrate a significant likelihood of petitioner's removal to Pakistan in the reasonably

11  foreseeable future, and because the government failed to comply with its own regulations

12  regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).

13         **B.  Claims Two and Three:  Third Country Removal**

14         In claim two, petitioner argues that ICE's current procedures for removal of detainees to

15  third countries violate the Fifth Amendment, the INA, the Convention Against Torture,

16  implementing regulations and the Administrative Procedure Act. (ECF No. 1 at 14-15.)  In claim

17  three, petitioner argues that punitive third country banishment violates the Eighth and Fifth

18  Amendments.  (<u>Id.</u> at 15-16.)  Although respondents do not address these claims in the response

19  to the petition, this Court recommends that these claims be denied for the following reasons.

20         To establish Article III standing, a party must allege an injury that is "concrete and

21  particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial

22  decision.  <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992).  The petition appear to be a

23  form petition and the record before the Court does not indicate that third country removal is at

24  issue.  (<u>See</u> ECF Nos. 1, 7, 7-1, 7-2.)  Because nothing before the Court shows any basis for

25  petitioner's third country removal claims, this Court finds that petitioner lacks standing to raise

26  his third country removal claims at this time and those claims should be denied.

27         **C.  Remedy**

28         Based on the recommendation that the petition be granted as to claims one and four, this

Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy.  See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy."). Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the August 24, 2009 Order of Supervision before his re-detention on July 24, 2025.

**VI.  MOTION FOR APPOINTMENT OF COUNSEL**

On December 29, 2025, petitioner filed a motion for appointment of counsel.  (ECF No. 3.)  Because this Court recommends that the petition be granted, petitioner's motion for appointment of counsel is denied as unnecessary.

**VII.  CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is denied as unnecessary; and

IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus be GRANTED as to claims one and four, and DENIED as to claims two and three.

2.  Petitioner Saleem Saqib be immediately released from ICE custody under the same conditions he was previously released in his August 24, 2009 order of supervision.  Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.

3.  Within **seven days** of the adoption of these findings and recommendations, respondents be ordered to file a status report addressing petitioner's status.

4.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of

the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 9, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Saqi2035.157(2)/2

13